IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| | Case No. 3:06cr192 |
| vs. | : |
| | JUDGE WALTER HERBERT RICE |
| THOMAS BALLATO, | : |
| Defendant. | : |

DECISION AND ENTRY OVERRULING DEFENDANT'S FIRST AND
SECOND MOTIONS TO SUPPRESS EVIDENCE (DOCS. ##45 AND 46)

Defendant Thomas Ballato ("Defendant" or "Ballato") is charged in the Indictment (Doc. #30) with one count of receipt of child pornography, in violation of 18 U.S.C. § 2252.[1] Much of the evidence upon which this prosecution is based was seized when an anticipatory search warrant was executed at Defendant's residence at 30A Country Manor Lane on or about October 4, 2004.[2] That warrant was based upon the affidavit of Postal Inspector Martin Arthur ("Arthur").

---

[1] Subsequent to the preparation of this Decision and Entry, a Superseding Indictment was returned against the Defendant, adding a second count of receipt of child pornography. (Doc. #79).

[2] A second search warrant was executed on that date at the Defendant's place of employment, Brannon and Associates. Since the Defendant has not requested that the Court suppress the evidence seized from that location, that search warrant will not be addressed herein.

The Defendant has filed two motions, requesting that the Court suppress the evidence which was seized as a result. See Docs. ##45 and 46. The Court conducted an oral and evidentiary hearing on the motion on March 2, 2007, and the parties have filed their post-hearing memoranda. See Docs. ##58, 63 and 65. Therefore, the Court now rules on those motions.

With the first of those motions (Doc. #45), Ballato argues that the evidence must be suppressed, because the anticipatory warrant issued during the investigation leading to this prosecution was invalid. He asserts in his second motion (Doc. #46) that the affidavit executed by Arthur, in order to obtain the anticipatory search warrant, violated the rule established in Franks v. Delaware, 438 U.S. 154 (1978). In his post-hearing memorandum (Doc. #58), he has relied exclusively upon the proposition, set forth in his second motion, that Arthur violated Franks. Thus, the Defendant has not addressed in that memorandum the contention, set forth in his first motion, that the anticipatory search warrant was invalid. Therefore, the Court overrules the Defendant's First Motion to Suppress (Doc. #45), as abandoned, and turns to the second such motion, beginning its analysis by reviewing the factual circumstances surrounding the anticipatory search warrant.

On October 4, 2004, Arthur executed an affidavit which he presented to Magistrate Judge Michael Merz, in order to obtain an anticipatory search warrant, authorizing officers to search the Defendant's residence, located at 30A Country Manor Lane, Dayton, Ohio, 45458. Judge Merz authorized the requested anticipatory search warrant. Arthur attached to that affidavit copies of email

- 2 -

communications between Thomas B and two Postal Inspectors, who had communicated with Thomas B while acting in undercover capacities, posing on the Internet as purveyors of child pornography. Arthur's affidavit and the attached emails provide as follows.

On or about September 7, 2004, Arthur was contacted by Adam Watson ("Watson"), a Postal Inspector assigned to the Washington office of the Postal Inspection Service, who was investigating transactions on the Internet involving child pornography, while acting in an undercover capacity. Watson told Arthur, a Postal Inspector assigned to the Cincinnati Field Office of the Postal Inspection Service, which covered the Dayton area, that he had posted an ad on the Internet, identifying himself as Kelly Mason, a 36-year old, divorced woman with daughters aged 12 and 14, selling pictures and videos. Watson had contacted Arthur, because an individual with whom he had been communicating by email over the Internet had indicated that he lived at 30A Country Manor Lane, Dayton, Ohio, 45458. Investigators determined that Ballato lived in that residence.

On September 1, 2004, Watson received an email from tomb9968@Yahoo.com ("tomb9968"). At that time, Watson was using the undercover email address of kelmason2000@Yahoo.com. The author of that email referred to himself as Thomas B,[3] and it had been sent from the following Internet Protocol or IP address, to wit: 68.250.166.6.[4] Thomas B was inquiring as to the

---

[3]The Defendant is alleged in the Indictment (Doc. #30) to be Thomas B.

[4]That IP address was assigned to Brannon and Associates, Ballato's employer. All of the emails described herein, which Thomas B directed at Watson's undercover persona, were sent from tomb9968, originating at the IP address of Brannon and Associates. All of the emails from Watson to Thomas B were sent from kelmason2000@Yahoo.com. The emails exchanged by Thomas B and Watson

- 3 -

availability of hardcore videos. In response, Watson sent an email to Thomas B at tomb9968, providing physical descriptions of his undercover persona, Kelly Mason, and her two daughters, and indicating that three videos were available for sale. On September 2, 2004, Watson received a response from Thomas B, requesting that the three videos be described in detail. In the response which he sent to tomb9968 that day, Watson set forth a detailed description of the three imaginary videos. According to that description, each of the three videos featured one or both of Kelly Mason's two minor daughters involved in sex acts. Also on September 2nd, Thomas B responded to Watson from tomb9968, stating: "Number 3 sounds great. Like to get it! How do we go from here?" See Affidavit in Support of Anticipatory Search Warrant (Attachment to Govt. Ex. 23) at 4.[5] Watson responded to Thomas B at tomb9968, indicating that the video would cost $20.00, that he (Thomas B) would be sent a postcard which contained specific information and that, upon receipt of the postcard, he was to respond to Kelly Mason by email, setting forth the information which was on the postcard, for verification purposes. On September 14, 2004, Thomas B responded by email, indicating that he had received the postcard and that 5738 was written on the back. He also asked where he should send the money. Although Watson responded with a Post Office Box in Merrifield, Virginia, Arthur did not indicate in his affidavit that Thomas B had ever sent the purchase price of the video to that Post Office Box. Indeed, the one count set forth against the Defendant in the

---

were attached to and incorporated into the affidavit executed by Arthur to obtain the anticipatory search warrant for Defendant's residence.

[5]Watson had described video number three as featuring Kelly Mason and her two daughters involved in sex acts with each other.

Indictment (Doc. #30) is not related to the email communications between Watson and the Defendant.

On or about September 16, 2004, Arthur was contacted by Postal Inspector Mark Ridley ("Ridley") of the Ft. Worth Division, who explained that, in his capacity as an undercover investigator of trafficking in child pornography on the Internet, he had posted the following ad in a number of Internet newsgroups:

> We have Lolita magazines for sale. Also, make custom videos of my daughter and her step-father at play. School is starting soon, so we need extra $$$$. If interested, email me: luvsmtits@Yahoo.com.

See Affidavit in Support of Anticipatory Search Warrant (Attachment to Govt. Ex. 23) at 5. Ridley explained to Arthur that, on August 18, 2004, he (Ridley) had received an email, responding to that ad from Thomas B at tomb9968, indicating that he had seen the ad and inquiring about the types of available magazines, the age of luvsmtits' daughter and whether the videos were hard core.[6] On August 30, 2004, Ridley, using the undercover name of Lee Smith, responded, indicting that her daughters were 8 and 12 and that her husband's daughter was 14. Ridley also stated that the 12-year old could do hard core and that descriptions of the magazines could be provided. On September 1, 2004, Thomas B replied, asking the price of a hardcore video with the 12-year old daughter, whether there were any soft core videos involving the 8-year old daughter and, if so, what they would

---

[6]The emails discussed herein which Thomas B sent to Ridley originated at the IP address for Brannon and Associates and were sent by tomb9968. In his communications with Thomas B, Ridley was acting in an undercover capacity, as the mother of two daughters and the step-mother of a third daughter. Ridley used the name Lee Smith and sent all his emails to Thomas B from luvsmtits@Yahoo.com. All of the emails between Watson and Thomas B were attached to the affidavit which Arthur presented to Judge Merz in order to obtain the anticipatory search warrant for Defendant's residence.

entail. Thomas B also asked for a description of the magazines. A response was sent describing videos with her husband's daughter and her 8-year old daughter. Another email was sent to Thomas B, describing the magazines. Thomas B responded twice to those emails. In his first, he asked whether there were any g-rated pictures of the girls which he could view to see what they look like, and indicated that he would be willing to play the male lead in a video. In the second, he stated that he wanted to start with some magazines and inquired about how he would order them. In his responsive email sent on September 5, 2004 ("Ridley's September 5th email"), Ridley informed Thomas B that he should send an email with his address and a password of his choosing.[7] Thomas B responded the next day, giving his address as 30A Country Manor Lane, Dayton, Ohio, 45458, and the password of squirt13. After an exchange of emails resolving the confusion on the part of Thomas B concerning the price being charged for the magazines, he ordered four magazines, to wit: Lolita #12, Nymph Lover #1, Lolita #17 and Incest #3.[8] Thomas B was informed that the cost of the magazines would be $80.00. He was told that he should cut four $20 bills in half and to send immediately half of each bill to Playground Videos at a Post Office Box in Kennedale, Texas. The other half of each would be sent to that address after he had received the magazines. On

---

[7]In the second paragraph of that email, Ridley stated that after the address for Thomas B had been received, he would be sent a letter by regular mail which contained another password. Thomas B would then email both passwords to Lee Smith, after which he would be given a Post Office Box to which the purchase price for the magazines would be sent. Arthur did not include a description of that paragraph of Ridley's September 5th email in his affidavit, although the entirety of that email was attached to that document.

[8]The descriptions of those magazines, which had been provided to Thomas B, indicated that each contained photographs of minors, as young as 6, engaging in sex acts with other minors and with adults.

September 16, 2004, Ridley received in the mail four halves of cut twenty dollar bills from TB at 30A Country Manor Lane, Dayton, Ohio, 45458.[9] The following day, Ridley sent to Arthur four magazines with titles similar to the titles Thomas B had ordered. Arthur indicates in his affidavit that each magazine depicts minors engaged in sexually explicit activity. On September 21, 2004, Thomas B sent an email, indicating that he had sent the money and asking when he the magazines would be shipped.[10]

In his affidavit, Arthur also explained the conditions under which the anticipatory search warrant would be served. The magazines that Ridley had sent to him would be placed in an express mail package and given to a Postal Inspector, posing as a letter carrier, who would deliver them to the residence located at 30A Country Manor Lane. The search warrant would not be served until the express mail package was delivered to and taken inside of that residence. Those events occurred, and the search warrant was served, with evidence being seized.

As indicated above, Ballato contends that Arthur's affidavit violated the rule set forth in <u>Franks, supra</u>. Therein, at the conclusion of its opinion, the Supreme Court summarized its holding:

> In sum, and to repeat with some embellishment what we stated at the beginning of this opinion: There is, of course, a presumption of validity with

---

[9] The envelope in which the currency had been sent was postmarked September 13, 2004. The Government has alleged in the Indictment (Doc. #30) that TB, like Thomas B, is a pseudonym utilized by the Defendant. Indeed, many of the emails discussed herein were signed with the initials "TB."

[10] As is indicated above, Arthur attached the emails between Ridley and the Defendant to his affidavit. In that document, Arthur also paraphrased portions of those emails and set forth information relayed to him by Ridley.

- 7 -

> respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

438 U.S. at 171-72 (footnote omitted). Herein, the Defendant argues that Arthur violated Franks, by failing to include material information in his affidavit. The Sixth Circuit has interpreted Franks as applying, to a limited degree, to alleged material omissions from an affidavit. United States v. Abboud, 438 F.3d 554, 574 (6th Cir.), cert. denied, 127 S.Ct. 446 (2006). In Hale v. Kart, 396 F.3d 721 (6th Cir. 2005), the Sixth Circuit set forth the applicable standards for determining whether omitting information from an affidavit violates Franks:

> In Mays v. City of Dayton, 134 F.3d 809 (6th Cir. 1998), this court clarified our standard for evaluating officers' conduct in the procurement of search warrants: "except in the very rare case where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, Franks is inapplicable to the omission of disputed facts." Mays, 134 F.3d at 816 (italics in original) .... In Atkin, this court further clarified the high bar to which we subject these sorts of inquiries: "If the defendant does succeed in making a preliminary showing that the government affiant engaged in 'deliberate falsehood' or 'reckless disregard for the truth' in omitting information from the affidavit, the court

must then consider the affidavit including the omitted portions and determine whether probable cause still exists." United States v. Atkin, 107 F.3d 1213, 1217 (6th Cir. 1997) (internal citations omitted).

These two combined holdings instruct district courts that plaintiffs must make a strong preliminary showing "that the affiant <u>with an intention to mislead</u> excluded critical information from the affidavit, and the omission is critical to the finding of probable cause." Mays, 134 F.3d at 816 (italics in original). Only if the plaintiff makes this "strong preliminary showing" may the court "consider the affidavit including the omitted portions and determine whether probable cause still exists." Atkin, 107 F.3d at 1217. Absent this first preliminary showing, the district court may not engage in the second inquiry related to probable cause.

Id. at 726 (footnote omitted).

Defendant contends that Arthur violated Franks, by failing to include in his affidavit a complete description of the email that Ridley sent to Thomas B on September 5, 2004, which was sent in response to an inquiry from Thomas B about how he would go about ordering magazines. Ridley's September 5th email provides in its entirety:

> You send Money Order or Cash to my PO Box. However, know that you send cash at your own risk. Also to verify that you are not a cop. [sic] You need to pick a password and email me that password, as well as the address where you want to receive the magazines or movie.
> I will then send a regular mail letter with specific instructions as well as a password. Once you receive the letter[,] you must email me with both of the passwords, and I will give you my P.O. Box info.

See Govt. Ex. 9. A copy of that email was attached to the affidavit that Arthur executed to obtain the anticipatory search warrant for Defendant's residence. See Affidavit in Support of Anticipatory Search Warrant (Attachment to Govt. Ex. 23). Although Arthur's affidavit contained a summary of the first paragraph of that email, he did not discuss the second paragraph therein. According to Defendant, if Arthur had included a discussion of the second paragraph of Ridley's September

- 9 -

5th email, Judge Merz would have not have concluded that this affidavit established probable cause to believe that he (Defendant) had engaged in a criminal offense involving possession of child pornography. Rather, according to Defendant, that judicial officer would have found that the Defendant's failure to send an email containing the passwords would have shown that the purchase of the four magazines containing child pornography had not been consummated, given that he must have believed that sending such an email was a predicate to any such purchase.[11] This Court cannot agree. For reasons which follow, the Court concludes that Defendant failed to meet his burden of showing "that [Arthur] <u>with an intention to mislead</u> excluded critical information from the affidavit." <u>Hale</u>, 396 F.3d at 726 (internal quotation marks and citation omitted; emphasis in the original).

During the oral and evidentiary hearing conducted to resolve this motion, Arthur testified that he had excluded from his affidavit a discussion of the second paragraph of Ridley's September 5th email, because he deemed that paragraph to be moot, given that ordering instructions, including an address to which the purchase price should be sent, had been provided to Thomas B. <u>See</u> Transcript of March 2, 2007 Oral and Evidentiary Hearing (Doc. #57) at 41. That Postal Inspector also testified that the letter had become a moot point to him, after he had heard that money had been received from Thomas B to purchase the four magazines. <u>Id</u>. at 46. In arguing that Arthur violated <u>Franks</u>, Defendant points to the fact that, on September 13, 2004, a letter, of the type described in the second

---

[11] Ballato did not send an email such as the one referred to in the second paragraph of Ridley's September 5th email.

paragraph of Ridley's September 5th email, was mailed by Ridley to Defendant's residence at 30A Country Manor Lane.[12] That letter (Govt. Ex. 24) contained a 12-digit number, which was described as a "confidential customer number." The communication emphasized that, "[s]ince you have already been provided with our mailing address, we require you to email us with the email you selected, as well as the number that has been assigned to you." See Govt. Ex. 24 (emphasis in the original). There is no indication in that letter that any previously placed orders would not be filled, until such an email was sent. Defendant never sent the requested email. Notwithstanding that letter, the other evidence before the Court causes it to find that Arthur failed to discuss the second paragraph of the September 5th email because he believed that issue raised therein to have been rendered moot, rather than because he was acting with the intent to mislead (or, in the language of Franks, making a deliberate falsehood or acting with a reckless disregard for the truth).

After Ridley had sent his email on September 5th, Thomas B had, on September 10th, ordered four magazines, and had asked further instructions about placing an order. See Govt. Ex 15. In that email, Thomas B did not mention the second paragraph of the September 5th email, or ask when he would be receiving the letter referred to therein. Ridley responded to the email from Thomas B that same day (i.e., September 10th), providing the payment option of cutting four $20 bills in half and immediately sending half of each to an address in Kennedale,

---

[12]Arthur testified that a discussion of that letter was not included in his affidavit, because it had become a moot point to him, after he had heard that money had been received from Thomas B to purchase the four magazines. See Transcript of March 2, 2007 Oral and Evidentiary Hearing (Doc. #57) at 46.

Texas, which was also provided, and sending the other half upon receipt of the magazines. See Govt. Ex. 16. Thomas B wrote to Ridley again on September 10th, indicating that he would cut the currency in half. See Govt. Ex. 17. Likewise, in that email, Thomas B did not mention the second paragraph of the September 5th email, or ask when he would be receiving the letter referred to therein. On September 13, 2004, Thomas B mailed the four cut $20 bills to the address in Kennedale, Texas, which had been provided by Ridley, to purchase the four magazines containing child pornography that he had ordered. Before mailing them, he again did not mention the second paragraph of the September 5th email, or ask when he would be receiving the letter referred to therein.

On the same day that Thomas B mailed the four cut $20 bills, Ridley sent a letter, of the type he had mentioned the second paragraph of the September 5th email, to 30A Country Manor Lane. Although no testimony or other evidence was presented, indicating that the Defendant received that letter, the Court assumes that he did. Nevertheless, Thomas B sent an email to Ridley on September 21, 2004, eight days after the letter had been sent to him and sixteen days after Ridley's September 5th email, indicating that he had sent the money and asking if it had been received and whether his order had been shipped. See Govt. Ex. 19. Notably missing from that email is any indication that Thomas B was under the impression that his order would not be filled, until he had received a letter and sent an email of the type mentioned in Ridley's September 5th email.[13]

---

[13] The Government argues that Ridley's email of September 23, 2004 (Govt. Ex. 20), further demonstrates that there was no violation of Franks herein. The Defendant, in turn, argues that the timing by which Ridley's October 1, 2004, email was sent to him demonstrates the opposite. Arthur was not aware of the existence of either of those emails when he drafted his affidavit. See Transcript of

Quite simply, the failure of either Thomas B or the undercover Postal Inspector with whom he was communicating by email to mention the second paragraph of Ridley's September 5th email, coupled with the facts that Thomas B was provided an address to which to send payment, placed an order, sent payment for same and inquired into the status of that order, while ignoring the second paragraph of that email, causes this Court to find that Arthur omitted a discussion of that paragraph, because, as he testified, he believed that issue had been rendered moot by the parties' subsequent actions. Moreover, it bears emphasis that Arthur attached the entirety of that email to his affidavit, thus rendering it difficult to conclude that he, as the affiant, acted with the intent to deceive by failing to discuss fully the content of an exhibit he had attached to that affidavit. Indeed, such a conclusion could only be made with proof that the affiant reasonably believed that the magistrate issuing the search warrant would not even bother to read the exhibits attached to his affidavit. Thus, this Court finds that Arthur omitted a discussion of the second paragraph of Ridley's September 5th email from his affidavit, because he believed that the issue raised therein had become moot, rather than acting with the intent to deceive, when he omitted such a discussion from his sworn document.

Since the Defendant is unable to establish that Arthur acted with the intent to deceive, the Court overrules the Defendant's Second Motion to Suppress Evidence (Doc. #46). The first such motion (Doc. #45), as discussed above, has

---

March 2nd Hearing (Doc. #57) at 38-39. Consequently, neither of those emails was attached to or discussed in Arthur's affidavit. Therefore, they cannot serve as evidence on the issue of whether he acted with an intent to deceive by excluding from that affidavit a discussion of the second paragraph of Ridley's September 5th email.

- 13 -

- 14 -

been overruled, given the Court's conclusion that the Defendant has abandoned the arguments set forth therein.

September 20, 2007

                                      WALTER HERBERT RICE, JUDGE
                                      UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.